Derek G. Howard (Bar No. 118082)
derek@derekhowardlaw.com
**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue
Mill Valley, CA 94941
(Tel.) (415) 432-7192
(Fax) 415-524-2419

Daniel J. Mulligan (Bar No. 103129)
dan@jmglawoffices.com
**JENKINS MULLIGAN & GABRIEL LLP**
10085 Carroll Canyon Rd., Ste 210.
San Diego, CA 92131-1100
(Tel.) (858)-527-1792
(Fax) (858)-527-1793

*Attorneys for Plaintiff Chad White
and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **CHAD WHITE, individually and on behalf of all others similarly situated,**<br><br>    Plaintiff,<br><br>    v.<br><br>**APPLE INC., a California Corporation,**<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **FRAUD AND DECEIT;**<br>2. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW;**<br>3. **UNJUST ENRICHMENT.**<br><br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................1

II. JURISDICTION AND VENUE ....................................................................................3

III. INTRADISTRICT ASSIGNMENT ...............................................................................3

IV. PARTIES ........................................................................................................................3

V. FACTUAL BACKGROUND .........................................................................................4

    A. Apple's Proprietary iOS Operating System Is Present in All iPhones and is a Necessary Component for the Phone to Work ..................................................4

    B. Apple Throttled iPhone Performance With its iOS 10.2.1 and 11 Updates .....5

    C. Apple is Forced to Acknowledge That It Designed iOS 10.2.1 and 11.2 To Throttle iPhone Performance ..............................................................................7

VI. CLASS ACTION ALLEGATIONS ...............................................................................8

Plaintiff Chad White ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class," as defined below), on personal knowledge with respect to facts pertaining to him and upon information and belief as to other matters, brings this class action complaint against Apple Inc. ("Apple"), alleging as follows:

## I. INTRODUCTION

1. Plaintiff brings this class action suit as a result of high-level decisions within Apple's management to withhold material information from iPhone users relating to the installation of software updates that were supposed to improve product performance.

2. There are millions of loyal iPhone users of all stripes that rely on the ubiquitous iPhone as an integral part of daily life.

3. Apple did not tell the full truth when it provided updates. As a result, Plaintiff and the putative class were left in the dark about the way their iPhones worked

4. They did not know, because Apple did not tell them, that Apple was able to manipulate the performance and utility of the phones.

5. In truth, the software updates included software that (in modern parlance) "throttled" or slowed down the processing speed of the iPhone(s) and caused a dramatic decline in performance.

6. Faced with pressure from all sides, Apple has now admitted that this occurred.

7. However, it is material that even with the admission, Apple long had this information (for almost a year) until the news entered the public domain.

8. Until then, millions of consumers and iPhone users have been unaware of the slowing of the processing speed, and iPhone users installed what they considered to be normal and recurring software updates, including iOS 10.2.1 and 11.2.

9. The ensuing updates affected several models of Apple's iPhones, including the iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus (collectively, the "Affected Phones").

10. Plaintiff White is the owner of one such iPhone 7 and installed the software updates in question.

///

11. Apple also did not inform Plaintiff White or consumers and iPhone users that the sluggish performance they were experiencing could be addressed by replacing the battery.

12. Rather, Plaintiff and consumers were left to believe that their Affected Phones were no longer able to perform adequately and needed to be replaced.

13. This is not the first time that Apple has had problems with batteries.

14. Earlier, Apple faced litigation over its alleged concealment of problems with iPod Batteries dying prematurely, resulting in a settlement that required Apple to reddress similar relief sought here.

15. The decision was a profitable one for Apple.

16. While the Affected Phones were impacted by the software updates in 2017, Apple promoted and released three new iPhone models – the iPhone 8, iPhone 8 Plus, and iPhone X – which are priced from $699 to over $1,000.

17. On December 18, 2017, reports surfaced that John Poole of Primate Labs, had discovered that Apple had installed the throttling software in certain iOS updates.

18. Mr. Poole is independent of Apple and Primate Labs provides performance analysis on iPhones and other Apple devices

19. Soon after, Apple acknowledged that it had installed the throttling software into two updates, iOS 10.2.1 and 11.2.[1]

20. Since the acknowledgement, Apple has faced angry iPhone users who have had long lines at its stores with iPhone users seeking relief.

21. In "*A Message to Our Customers about iPhone Batteries and Performance,*" on December 28, 2017, Apple issued an "apology" for its conduct and offered to replace batteries in Affected Phones for a reduced price.

22. On January 10, 2018, *Forbes* reported that iOS 11.2.2 had issued "its most important update in some time" (Emphasis in original) contained "a very nasty surprise indeed,

---

[1] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (Visited January 12, 2018).

and reported that the 11.2.2 security update had in the case of one tech developer, slowed his single and multi-core performance by 41% and 39% respectively.[2]

## II. JURISDICTION AND VENUE

23. This Court has original jurisdiction of this action under 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.

24. At least one proposed Class member is a citizen of a state different from Apple.

25. This Court has personal jurisdiction over Apple, which is incorporated under California law and is headquartered in Cupertino, California.

26. Venue is proper in this Court under 28 U.S.C. § 1391.

27. Apple resides in, and has its most significant contacts with, the Northern District of California.

28. A substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## III. INTRADISTRICT ASSIGNMENT

29. Assignment to the San Jose Division is appropriate under Local Civil Rule 3-2(c) and (e) A substantial part of the events or omissions which give rise to the claims alleged herein occurred at Apple's headquarters, which is located in Santa Clara County.

## IV. PARTIES

30. Plaintiff Chad White resides in Irvine, California, and purchased an iPhone 7.

31. Plaintiff updated the phone's software to iOS 10.2.1 and then experienced a significant decline in its processing speed.

32. Defendant Apple is a California incorporated company headquartered at 1 Infinite Loop, Cupertino, California, 95014. The Company designs, manufactures and markets the "iPhone line" that is used by millions of loyal consumers. Apple also sells a variety of software and services for use with iPhones.

---

[2] https://www.forbes.com/sites/gordonkelly/2018/01/10/apple-ios-11-2-2-battery-life-iphone-performance-slowdown-throttle/#5d7ebc1b3c84

## V.     FACTUAL BACKGROUND

### A.     APPLE'S PROPRIETARY iOS OPERATING SYSTEM IS PRESENT IN ALL iPHONES AND IS A NECESSARY COMPONENT FOR THE PHONE TO WORK

33.    From 2007 to the present, Apple has introduced 18 models of the iPhone.[3]

34.    All iPhones run on Apple's proprietary iOS system software.

35.    Apple released the first version of iOS in June 2007.

36.    During this period, Apple has updated iOS multiple times, either to add new iPhone features or to fix software bugs.

37.    Apple's near annual release of a new version of iOS generally coincides with the introduction of Apple's newest iPhone model.

38.    Consumers regularly update their iPhones to the most recent iOS to maintain and enhance the device's functionality.

39.    The updating of phones is understood to be a necessary activity on the advice of Apple in order improve the performance of the phone.

40.    For this reason alone, consumers are accustomed to updating their phones as part of ordinary usage of a smartphone like the iPhone.

41.    Consistent with this reliance with the purchase and use of an iPhone, Apple has regularly updated the software always expressing that the purpose of the update is to make the iPhone better.

42.    The versions of iOS at issue in this litigation include iOS 10.2.1 and iOS 11.[4]

///

///

---

[3] Paiching Wei, "10 years of iPhones: A timeline showing the phone's evolution," *The Mercury News*, January 2017, available at: https://www.mercurynews.com/2017/01/07/10-years-of-iphones-a-timeline/; (visited January 12, 2018).

*See also* Apple press release dated September 12, 2017, "iPhone 8 and iPhone 8 Plus: A new generation of iPhone," available at: https://www.apple.com/newsroom/2017/09/iphone-8-and-iphone-8-plus-a-new-generation-of-iphone/ (visited January 12, 2018).

[4] Apple website, "About the security dontent of iOS 11.2.1," dated December 13, 2017, available at: https://support.apple.com/en-us/HT208357 (Visited January 12, 2018).

B. **APPLE THROTTLED IPHONE PERFORMANCE WITH ITS IOS 10.2.1 AND 11 UPDATES**

43. In the Fall of 2016, Apple received reports that its iPhone 6, 6 Plus, 6s, and 6s Plus devices were unexpectedly shutting down.[5]

44. The phones remained inoperable until plugged into a charger.[6]

45. The public backlash led Apple to initiate its "iPhone 6s Program for Unexpected Shutdown Issues" on November 20, 2016.[7]

46. Two months later, on January 23, 2017, Apple sent users of Affected Phones a notification of software update, iOS 10.2.1.

47. Among other things, Apple indicated that the iOS 10.2.1 update would "improve[] power management during peak workloads to avoid unexpected shutdowns[.]"[8]

48. On February 23, 2017, Apple provided a statement to technology publication TechCrunch, affirming that iOS 10.2.1 had fixed the shutdown problem:

> With iOS 10.2.1, Apple made improvements to reduce occurrences of unexpected shutdowns that a small number of users were experiencing with their iPhone. iOS 10.2.1 already has over 50% of active iOS devices upgraded and the diagnostic data we've received from upgraders shows that for this small percentage of users experiencing the issue, we're seeing a more than 80% reduction in iPhone 6s and over 70% reduction on iPhone 6 of devices unexpectedly shutting down.

///

///

///

---

[5] Liam Tung, "iPhone 6, 6s sudden shutdown? We've almost fully cured issue with iOS 10.2.1, says Apple," ZDNet, February 24, 2017, available at: http://www.zdnet.com/article/iphone-6-6s-sudden-shutdown-weve-almost-fully-cured-issue-with-ios-10-2-1-says-apple/. (Discussing "tide" of complaints on Apple's forums.") (Visited January 12, 2018).

[6] *Id.*

[7] Apple website: "iPhone 6s Program for Unexpected Shutdown Issues," information as of November 30, 2016, available at: https://www.apple.com/au/support/iphone6s-unexpectedshutdown/.

[8] Apple website: "Download iOS 10.0-iOS 10.3.3 Information," available at: https://support.apple.com/kb/DL1893?locale=en_US (Visited January 12, 2018).

> We also added the ability for the phone to restart without needing to connect to power, if a user still encounters an unexpected shutdown… [9]

49. However, throughout 2017, Apple failed to inform consumers that this remedy came with a significant – and undisclosed – tradeoff.

50. To address the sudden shutdown problem, iOS 10.2.1 significantly slowed the processing speed of the Affected Phones.

51. Neither the software update notification nor the software update release notes made any mention of this throttling effect.

52. As a result, when performance of Affected Phones significantly declined, consumers were left to believe that their device had reached the end of its useful life and needed to be replaced.

53. Apple is known for its loyal consumers who stay with the iPhone product line when it is time to purchase a new device.

54. One April 2017 survey found that "Ninety-two percent of US iPhone users who plan to upgrade their phone in the next year plan to repurchase an iPhone, up from 86% the year before."

55. Thus, Apple knew that Plaintiff and the Class members were likely to replace their Affected Phones with a newer model of the iPhone.

56. Indeed, following implementation of iOS 10.2.1, Apple introduced some of its most expensive iPhones ever. On September 12, 2017, Apple revealed three new models: iPhone 8, 8 Plus, and X.[10]

///

---

[9] Matthew Panzarino, "Apple says iOS 10.2.1 has reduced unexpected iPhone 6s shutdown issues by 80%," *TechCrunch*, February 23, 2017, available at: https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/ (Visited January 12, 2018)

[10] Apple press release, "iPhone 8 and iPhone 8 Plus: A new generation of iPhone," September 12, 2017, available at: https://www.apple.com/newsroom/2017/09/iphone-8-and-iphone-8-plus-a-new-generation-of-iphone/; Apple press release, "The future is here: iPhone X," September 12, 2017 https://www.apple.com/newsroom/2017/09/the-future-is-here-iphone-x/.

57. Pricing for the iPhone 8 and 8 Plus started at $699, while the iPhone X had a base price of $999.

C. **APPLE IS FORCED TO ACKNOWLEDGE THAT IT DESIGNED iOS 10.2.1 AND 11.2 TO THROTTLE iPHONE PERFORMANCE**

58. Beginning on December 18, 2017, a series of reports were issued by independent sources concluding that the iOS 10.2.1 and iOS 11.2 software updates had caused the Affected Phones to slow down in performance.

59. John Poole of Geekbench and Primate Labs, has published a technical report and is alleged to have analyzed 100,000 iPhones.

60. Primate Labs concluded that the decrease in performance of the Affected Phones was caused by the iOS 10.2.1 and iOS 11.2 updates, and not the normal decreased function that would be caused by an aging battery.[11]

61. Geekbench has reported that iOS 11.2.0 introduces similar throttling for iPhone 7 units with older batteries.[12]

62. On December 20, 2017, Apple admitted to *TechCrunch* that the iOS 10.2.1 and iOS 11.2 software updates included a "throttling" feature to slow down older iPhone models and prolong their life.

63. Apple stated that lithium ion batteries used in iPhones degraded over time "which can result in the device unexpectedly shutting down to protect its electronic components."[13]

64. However, *Wired* magazine has also reported that because iPhone users were never told of the throttling feature, they were never given the choice of just fixing their batteries rather than losing performance: "Rather than quietly push out an update that crimped older iPhones, it

---

[11] John Gee, "*iPhone Performance and Battery Age,*" December 18, 2017, available at https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (Visited January 12, 2018).

[12] https://www.theverge.com/2017/12/20/16800058/apple-iphone-slow-fix-battery-life-capacity (Visited January 12, 2018).

[13] Paul Santos, "Apple: All You Wanted To Know On The iPhone Throttling Scandal," *Seeking Alpha*, December 26, 2017, available at http://www.seekingalpha.com/article/41333931-apple-wanted know-iphone-throttling-scandal.

should have made that throttling opt-in. As it stands, there's no way to avoid having your phone slowed down once the battery reaches its limits."

65. Apple's move has widely come off as deceptive."[14]

66. Further, the new software updates did not reverse the battery degradation.

67. On December 28, 2017, Apple released an "apology" and acknowledged that the iOS 10.2.1 software update first delivered in January 2017, as well as the more recent iOS 11.2 software update, had negatively impacted performance of their phones:

> About a year ago in iOS 10.2.1, we delivered a software update that improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE. With the update, iOS dynamically manages the maximum performance of some system components when needed to prevent a shutdown. While these changes may go unnoticed, in some cases users *may experience longer launch times for apps and other reductions in performance*. (Emphasis added.)

68. Notably, Apple did not address, nor deny, the fact that it never asked users for their authorization to slow down their phones, nor inform them of this change.[15]

69. As a result, Plaintiff and other Class members were not notified when the power management technique was taking effect and were deceived into thinking that their iPhones were no longer capable of providing an adequate level of performance.

## VI. CLASS ACTION ALLEGATIONS

70. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this action individually and on behalf of a Class defined as follows:

> All persons and entities in the United States who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and installed iOS 10.2.1 or 11.2 on their iPhone.

---

[14] Jordan McMahan, "Apple Had Way Better Options Than Slowing Down Your Phone," *Wired*, December 21, 2017, available at http://www.wired .com/story/apple-iphone-battery-slow-down/.

[15] Apple website, "A Message to Our Customers about iPhone Batteries and Performance," dated December 28, 2017, available at: https://www.apple.com/iphone-battery-and-performance/ (Visited January 12, 2018).

Excluded from the Classes are Apple and any entity in which Apple has a controlling interest, as well as Apple's officers, directors, and employees, and their legal representatives, heirs, successors, or assigns.

71. Members of the Class are so numerous that joinder is impracticable. Apple sold tens of millions of the Affected Phones in the United States, and Apple has records of owners.

72. There are questions of law or fact common to the Class including, but not limited to, the following:

    a.    Whether Apple misrepresented and/or failed to adequately disclose that installing iOS 10.2.1 and 11.2 would negatively impact performance of an Affected Phone.

    b.    Whether and to what extent iOS 10.2.1 and 11.2 impacted performance of the Affected Phones;

    c.    Whether Defendant purposefully or knowingly designed iOS 10.2.1 and 11.2 to impact performance of the Affected Phones;

    d.    Whether Defendant informed customers that the decline in the Affected Phones' performance attributable to iOS 10.2.1 and 11.2 could be remedied by replacing the battery; and

    e.    Whether and to what extent the detrimental aspects of iOS 10.2.1 and 11.2 were also present in versions of the operating system subsequent to iOS 10.2.1 and 11.2.

73. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were damaged by the same wrongful practices of Apple.

74. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff is a member of the proposed Class he seeks to represent.

75. Plaintiff's interests are aligned with, and not antagonistic to, those of the Class. Plaintiff has retained counsel competent and experienced in complex class action litigation.

76. Proceeding as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

///

77. Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Apple.

78. Moreover, Apple has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

79. Additionally, questions of law or fact common to Class members predominate over any questions affecting only individual Class members.

80. Plaintiff knows of no special difficulty maintaining this action that would preclude its maintenance as a class action.

## COUNT ONE

## FRAUD AND DECEIT

81. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

82. The Affected Phones contain Apple's proprietary iOS operating system. Apple intentionally designed the iOS 10.2.1 and 11.2 software updates to throttle performance on the Affected Phones under certain conditions.

83. The throttling was intended by, and known to, Apple at the time it released iOS 10.2.1 and 11.2, but was not disclosed to Plaintiff and the Class.

84. Plaintiff and the Class members relied on the representation that the iOS 10.2.1 software update contained only bug fixes and security improvements.

85. Apple concealed that iOS 10.2.1 also was designed to throttle the processor speed under certain battery conditions.

86. Plaintiff and the Class members reasonably relied on the representations and omissions made in the software update descriptions and notifications provided by Apple.

87. Prior to downloading iOS 10.2.1 and 11.2, Plaintiff and the Class members did not have access to material facts informing them of the throttling feature.

///

88. Had the truth been known, Plaintiff and the Class members would not have installed iOS 10.2.1 and 11.2 because adequate processing speed is essential to the proper functioning of the Affected Phones.

89. As a direct and legal result of the Apple's deception, Plaintiff and the Class members were harmed. By downloading iOS 10.2.1 and 11.2, performance of their Affected Phones was negatively impacted.

90. Apple's wrongful acts were done maliciously, oppressively, deliberately, and with intent to defraud Plaintiff and the Class members. As a result, Plaintiff and the Class members seek punitive damages.

## COUNT TWO

## VIOLATION OF CALIFORNIA'S

## UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.)

91. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

92. California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) is designed to protect consumers from unlawful, unfair, or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact.

93. Apple has engaged, and continues to engage, in unfair business practices with regard to software updates to its operating system.

94. Apple designed iOS 10.2.1 and 11.2 in a manner that materially diminishes the speed and performance of the Affected Phones.

95. Apple failed to inform consumers of the reasons for the intentionally-implemented decline in performance.

96. Apple also failed to inform consumers that substantially faster processing speeds could be restored by replacing the battery.

97. Apple's conduct is unfair because it was substantially injurious to consumers, and is immoral, unethical, oppressive, or unscrupulous.

98. Apple's conduct is not outweighed by any countervailing benefits to consumers.

99. Apple's conduct is fraudulent because Apple represented that the iOS 10.2.1 and 11.2 software updates contained only bug fixes and security improvements, and concealed that the updates were also designed to and did throttle the processor speed under certain battery conditions.

100. Apple's conduct and the harm it caused, and continues to cause, is not reasonably avoidable by Plaintiff and the Class members.

101. Apple knew or had reason to know that Plaintiff and the Class members could not have reasonably known or discovered the existence of the performance problems that installing iOS 10.2.1 and 11.2 would cause.

102. Had Plaintiff and the Class members known that iOS 10.2.1 and 11.2 would substantially and negatively impact the performance of the Affected Phones, they would not have installed that software update.

103. Apple's unfair and fraudulent business practices directly and proximately caused damage to Plaintiff and the Class members.

104. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order: (a) requiring Apple to cease the deceptive and unfair business practices alleged herein; (b) requiring Apple to restore to Plaintiff and the Class members any money acquired by means of the deceptive and unfair business practices (restitution); and (c) awarding reasonable costs and attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## COUNT THREE

## UNJUST ENRICHMENT

105. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

106. Plaintiff and other Class members paid substantial sums of money to buy the Affected Phones.

///

///

107. Apple has also received revenue from customers who replaced their Affected Phones with newer models after being misled to believe that the Affected Phones had reached the end of their useful lives.

108. Additionally, Apple has received revenue from consumers who have paid to replace the batteries in the Affected Phones.

109. Apple knew that the revenue realized by Apple came at the direct expense of Plaintiff and the Class members.

110. Apple accepted the revenue under circumstances that made it inequitable for Apple to retain the benefit.

111. Plaintiff and the Class members have been, and continue to be, damaged by Apple's actions and Apple has been unjustly enriched thereby.

112. Plaintiff and the Class members are therefore entitled to disgorgement of the revenue Apple received as a result of its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

A. Determine that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3);

B. Direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

C. Pursuant to F.R.Civ. P. 23, appoint Plaintiff as one the Class Representatives;

D. Pursuant to F.R.Civ. P. 23, appoint Plaintiff's counsel as one of the Class Counsel;

E. Enter judgment against Defendant and in favor of Plaintiff and the Class;

F. Issue an order holding that the acts alleged herein by Plaintiff and the Class against Defendant constitutes a violation of California's Unfair Competition Law ("UCL") Business and Professions Code §§17200-17204 *et.seq.*

G. Award all compensatory and statutory damages to Plaintiff and the Class in an amount to be determined at trial;

H. Award restitution, including the disgorgement of any unjust enrichment, including all money, revenue, direct or indirect financial benefit or other type of profit realized by Apple as a result of its wrongful conduct, payable to Plaintiff and the Class members;

I. Award punitive damages, or other exemplary damages as allowed under law, in an appropriate amount;

J. Enter an injunction permanently barring continuation of the alleged conduct alleged herein;

K. Award Plaintiff and the Class the costs incurred in this action together with reasonable attorneys' fees and expenses, including any necessary expert fees as well as pre-judgment and post-judgment interest; and

L. Grant such other and further relief as is necessary to correct for the effects of Defendant's unlawful conduct and as the Court deems just and proper.

Dated: January 12, 2018

**JENKINS MULLIGAN & GABRIEL LLP**
**DEREK G. HOWARD LAW FIRM, INC.**

*/s/ Derek G. Howard*
**DEREK G. HOWARD**
*Attorneys for Plaintiff and the Proposed Class*

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all issues so triable.

Dated: January 12, 2018        **DEREK G. HOWARD LAW FIRM, INC.**

*/s/ Derek G. Howard*
**DEREK G. HOWARD**
*Attorneys for Plaintiff and the Proposed Class*